UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DONNELLY R. VILLEGAS, an enrolled
member of the Spokane Tribe of
Indians,

                    Plaintiff,

          v.

UNITED STATES OF AMERICA;
DEPARTMENT OF THE INTERIOR; BUREAU
OF INDIAN AFFAIRS; BUREAU OF LAND
MANAGEMENT; BUREAU OF SAFETY AND
ENVIRONMENTAL ENFORCEMENT
(formerly the MINERALS MANAGEMENT
SERVICE); ENVIRONMENTAL PROTECTION
AGENCY; DEPARTMENT OF JUSTICE;
OFFICE OF THE INSPECTOR GENERAL;
LISA P. JACKSON; REBECCA ANNE
BATTS; STAN SPEAKS; ERIC H.
HOLDER, JR.; KENNETH L. SALAZAR;
ROBERT ABBEY; MICHAEL R. BROMWICH;
DAWN MINING COMPANY, LLC; NEWMONT
USA LIMITED; WASHINGTON WATER
POWER/AVISTA; and ESTATE OF
WILLARD SHARPE,

                    Defendants.

NO. CV-12-0001-EFS

**ORDER GRANTING NEWMONT
USA'S MOTION TO DISMISS,
DENYING AS MOOT DAWN
MINING CO'S MOTION TO
DISMISS, AND GRANTING
NEWMONT USA AND DAWN
MINING'S JOINT MOTION TO
QUASH SUBPOENA**

     Before the Court, without oral argument, are Defendant Newmont USA's
Motion to Dismiss Under Rule 12(B)(6) [sic], ECF No. 38, Defendant Dawn
Mining Company, LLC's Motion to Dismiss for Lack of Jurisdiction and
Failure to Join an Indispensable Party, ECF No. 41, and those Defendants'
Joint Motion to Quash Subpoena, ECF No. 92, and related Motion to

ORDER ~ 1

Expedite, ECF No. 95.  After reviewing the parties' submissions, the record in this matter, and applicable authority, the Court is fully informed.  For the reasons set forth below, the Court grants the parties' motions.

**I.   Background**[1]

    **A.   Allotment No. 156**

Plaintiff Donnelly Villegas is an enrolled member of the Spokane Tribe of Indians (hereinafter, "Spokane Tribe"), a federally-recognized Indian tribe.  The Spokane Indian Reservation was created on January 18, 1881, by an Executive Order of President Rutherford B. Hayes.  By a 1902 Act of Congress, the United States opened the Spokane Reservation to mineral development, providing that the Reservation "shall be subject to entry under the laws of the United States in relation to the entry of mineral lands."  In another Act passed later that year, Congress directed the Secretary of the Interior to "make allotments in severalty to the Indians of the Spokane Indian Reservation in the State of Washington, and

---

    [1]  This "background" section is based on the factual allegations contained in the Complaint, ECF No. 1.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  The Court assumes to be true those portions of the Complaint that "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," but does not afford the presumption of truth to allegations that "simply recite the elements of a cause of action."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

upon the completion of such allotments the President shall by proclamation give public notice thereof, whereupon the lands in said reservation not allotted to Indians or used or reserved by the Government, or occupied for school purposes, shall be opened to exploration, location, occupation, and purchase under the mining laws." In 1908, Congress passed an act directing the Secretary of the Interior to make allotments to all members of the Spokane Tribe who had not received allotments, and to sell and dispose of all unallotted "surplus" lands for use in agriculture and timber production. This process of allotment and distribution was consistent with the United States' policy of "assimilation" of Indian tribes in the period surrounding the turn of the nineteenth century.

In 1910, pursuant to the Acts of Congress described above, Allotment No. 156 was issued to Edward Boyd.[2]  The issuing instrument stated that the United States would hold the land in trust for twenty-five years "for the sole use and benefit of" Mr. Boyd, and that at the end of that period, the United States would convey the 120-acre property in fee to Mr. Boyd or his heirs.  Mr. Boyd died intestate in 1939, at which time his interest in the allotment was divided between his spouse and six children.  By 1956, following the death of a number of Mr. Boyd's

---

[2] Allotment No. 156 is legally described as the northwest quarter of the southeast quarter and the east half of the southwest quarter of Section twelve in Township twenty-eight north of Range thirty-seven east of the Willamette Meridian, Washington.

children, the interests in the allotment became concentrated in Lucy and Richard Boyd.

In a 1973 order entered in an otherwise-unspecified adjudication titled *In the Matter of the Estates of Richard Boyd*, a one-half interest in Allotment No. 156 was awarded to the Spokane Tribe, and the remaining 60-acre interest was divided equally between Mr. Villegas and his sister, Ortencia Ford.  As part of this probate settlement, Mr. Villegas was also awarded an interest in stockpiles of high-grade uranium located in Ford, Washington.  The funds derived from these interests were to be paid into an account managed by William Sharpe and ONB Bank and Trust until October 1974.

Fee title to the land was never transferred to Mr. Boyd or his heirs, and Mr. Villegas holds a one-half interest in a 60-acre portion of Allotment No. 156 to this day.

**B.   The Midnite Mine**

In 1954, Defendant Dawn Mining Company, LLC (hereinafter "Dawn Mining") leased approximately 571 acres of the Spokane Indian Reservation from the United States for the purpose of mining uranium.  Floyd H. Phillips, Superintendent of Defendant the United States Department of Interior's Colville Indian Agency, entered into the lease "for and on behalf of the Spokane Tribe of Indians."  The land covered by the 1954 lease included unallotted land that was part of the original Spokane Reservation, as well as the entirety of Allotment No. 156.  In 1956, the Superintendent of the Colville Indian Agency again leased the allotment to Dawn Mining and Newmont USA Limited (hereinafter "Newmont")[3] for a

---

[3] The relationship between Dawn Mining and Newmont is unclear; the

period of 15 years because "the individual Indian ownership was not entirely clear due to pending probate." Both leases were approved by the Bureau of Indian Affairs' Acting Area Director. Mr. Boyd's heirs were neither consulted about nor informed of either lease.

The 1956 lease required Dawn Mining and Newmont to submit monthly reports to the Superintendent of the Colville Indian Agency and to pay annual rents and royalties directly to the Superintendent, who would then issue rents and royalties to the allottees. The Superintendent was also tasked with directing audits of each lessee's accounts and books, while the Mineral Management Service was tasked with conducting audits of the rents and royalties paid to the Colville Indian Agency. Both the 1954 and 1956 leases also provided the Secretary of the Interior with the authority to suspend mining operations, to collect a bond, to inspect the property, to approve the lessee's attempts to terminate the lease upon showing that full provision had been made for the conservation and protection of the property, and to terminate each lease for violations of the lease's terms and conditions.

In 1964, Mr. Boyd's heirs and ONB Bank and Trust entered into a ten-year mining lease with Dawn Mining and Newmont under the same terms as the 1956 lease. In his responsive materials, Mr. Villegas states that he personally entered into a lease with Dawn Mining in 1976 that required Dawn Mining to pay rent and provide Mr. Villegas with royalties for ore

---

Complaint initially refers to Dawn Mining separately, but then refers to both Defendants jointly as "Dawn/Newmont" without further elaboration. *Compare* ECF No. 1 ¶ 33 *with id*. ¶¶ 32, 35 & 38.

extracted from the property; however, based on reasons raised in
Newmont's Objections to Declaration of Donnelly R. Villegas and its
Declaration, ECF No. 98, the Court disregards these supplemental filings
when ruling on the instant motions to dismiss.  *See Lee v. City of Los
Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

The site leased by Dawn Mining and Newmont was developed into the
"Midnite Mine," a large open-pit uranium mine that was closed in 1981.
Due to the radioactive ore and toxic metals that were extracted from the
mine, the Midnite Mine is currently the subject of a $152 million
environmental cleanup project.  In 2011, the Bureau of Indian Affairs
determined that portions of Allotment No. 156 could not be logged due to
extensive environmental damage and radioactivity.  In January of this
year, Senior United States District Judge Justin Quackenbush signed a
consent decree between the United States, Dawn Mining, and Newmont
regarding their respective obligations to fund the environmental cleanup
under the Comprehensive Environmental Response, Compensation, and
Liability Act (CERCLA), 42 U.S.C. § 9607.  *See United States v. Newmont
USA Limited and Dawn Mining Co., LLC*, No. CV-05-020-JLQ, ECF No. 553
(E.D. Wash. Jan. 17, 2012).

**C.  Alleged Breaches of Lease and Trust Obligations**

The Complaint asserts that the United States, Dawn Mining, Newmont,
Washington Water Power/AVISTA, and Mr. Sharpe violated their obligations
to Mr. Villegas in a number of ways:

•    The United States has failed to award Mr. Villegas full payment
for the income derived from the processing of uranium stockpiles both in
Ford, Washington, and at the Midnite Mine; has failed to hold Dawn Mining

and Newmont "accountable"; has failed to provide Mr. Villegas with accounts and records pertaining to the leases; has drawn charges against Mr. Villegas' trust account without explanation; and has utilized a right-of-way through Allotment No. 156 without compensating Mr. Villegas for its use.

• Dawn Mining and Newmont have at times operated on the allotment without permission and/or under an expired lease; have manipulated the "grade" and under-measured the quantity of ore extracted from the mine; have placed Mr. Villegas' funds into an escrow account and charged Mr. Villegas for resoration of the mine in violation of the 1956 lease agreement; have illegitimately charged Mr. Villegas for services; and have utilized a right-of-way through Allotment No. 156 without compensating Mr. Villegas for its use.

• Washington Water Power/AVISTA constructed power lines over Allotment No. 156 without authorization.

The Complaint also asserts that the income from Mr. Villegas' probate settlement were paid to Mr. Sharpe and ONB Bank and Trust until March 1978, and that the funds recieved between October 1974 and March 1978 have never been distributed to Mr. Villegas. Finally, the Complaint states that "[u]pon information and belief, at some point in 1961 the posts marking the allotment were moved from their original placement" in order to fraudulently replace the valuable allotment land with less-valuable land, but does not identify the actor. ECF No. 1 ¶ 40.

### D.  Legal Action

Mr. Villegas filed the Complaint in this matter on January 3, 2012, asserting claims against a number of United States agencies and officials

1  (hereinafter "Federal Defendants"), Dawn Mining, Newmont, Washington
2  Water Power/AVISTA, ONB Bank and Trust, and the Estate of Willard [sic]
3  Sharpe.  ECF No. 1.  On February 7, 2012, the Court granted Mr. Villegas'
4  motion to voluntarily dismiss his claims against ONB Bank and Trust.  ECF
5  No. 19.  On March 15, 2012, Dawn Mining and Newmont filed the instant
6  motions to dismiss, each joining in the other's motion.  ECF Nos. 38, 41,
7  44 & 45.  On March 30, 2012, the Federal Defendants filed a motion to
8  dismiss, ECF No. 61, which is noted for hearing on July 25, 2012.  ECF
9  No. 74.  On April 30, 2012, Dawn Mining and Newmont jointly filed the
10 instant motion to quash subpoena.  ECF No. 95.

**II.  Motions to Dismiss**

     **A.   Legal Standard**

13     A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)
14 tests the legal sufficiency of the pleadings.  *Navarro v. Block*, 250 F.3d
15 729, 732 (9th Cir. 2001).  A complaint may be dismissed for failure to
16 state a claim under Rule 12(b)(6) where the factual allegations do not
17 raise the right to relief above the speculative level.  *Ashcroft v.
18 Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555
19 (2007).  Conversely, a complaint may not be dismissed for failure to
20 state a claim where the allegations plausibly show that the pleader is
21 entitled to relief.  *Twombly*, 550 U.S. at 555.  In ruling on a motion
22 under Rule 12(b)(6), a court must construe the pleadings in the light
23 most favorable to the plaintiff and accept all material factual
24 allegations in the complaint, as well as any reasonable inferences drawn
25 therefrom.  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).
26 /

**B.   Analysis**

Mr. Villegas asserts four claims against Dawn Mining and Newmont: breach of contract, fraud and constructive fraud, trespass, and tortious damage to the environment.[4]  The Court addresses each in turn.

**i.   Breach of Contract Claim**

Mr. Villegas asserts that Dawn Mining and Newmont breached the numerous lease agreements described above by charging him for services not authorized under the leases; operating on the allotment under an expired lease; manipulating the "grade" of ore extracted from the Midnite Mine; mismanaging his trust account; and allowing the standing timber on Allotment No. 156 to become irradiated to the point that it could not be logged.   Dawn Mining and Newmont argue that this claim should be dismissed because it is barred by the applicable statute of limitations, because the Complaint does not identify which provisions of each lease were breached, and because Mr. Villegas has not plead damages stemming from the alleged breach.

Under Washington law, the statute of limitations for claims arising from the breach of written contracts is six years.   RCW 4.16.040(1); *see also Ballard Sq. Condo. Owners Ass'n v. Dynasty Const. Co.*, 158 Wn.2d 603, 615 (2006).   It is undisputed that operations at the Midnite Mine ceased in 1981, and Mr. Villegas has not alleged any breach by either

---

[4] The Complaint also asserts a claim for breach of fiduciary duty with regard to "non-Federal Defendants"; in his responsive memoranda, Mr. Villegas clarifies that this claim is not asserted against Dawn Mining or Newmont.

Dawn Mining or Newmont that occurred within the last six years. Rather, Mr. Villegas argues that the statute of limitations should be tolled pursuant to 1) the so-called "discovery rule"; and 2) the Indian Trust Accounting Act (ITAS), Pub. L. No. 108-108, Tit. I, 117 Stat. 1263 (2003).

The discovery rule is an exception to the general rule that a cause of action accrues when the party has the right to apply to a court for relief. *1000 Va. Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575 (2006). Under the discovery rule, "the cause of action accrues when the plaintiff discovers, or in the reasonable exercise of diligence should discover . . . the salient facts underlying the elements of the cause of action." *Id.* at 575-76 (citing *Green v. A.P.C.*, 136 Wn.2d 87, 95 (1998)). However, Washington courts do not apply the discovery rule to cases involving written contracts, but have instead "consistently held that accrual of a contract action occurs on breach." *Id.* While the Washington Supreme Court identified a narrow exception in *1000 Virginia Ltd.* under which the discovery rule may be applied when a complaint alleges a latent construction defect, the state Supreme Court has clearly stated that the discovery rule may not be applied to toll contract actions like the breach-of-lease claim at issue in this case. As such, the Court does not address the issue of when Mr. Villegas did or reasonably should have discovered the alleged breaches. Mr. Villegas' claim is barred by Washington's six-year statute of limitations.

Mr. Villegas next argues that accrual of his breach of contract claim is deferred by ITAS. ITAS is a 2003 appropriations bill that

includes the following directive in a section titled "Office of Special Trustee for American Indians; Federal Trust Programs":

> *Provided further,* That notwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim . . . concerning losses to or mismanagement of trust funds, until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss.

Pub. L. No. 108-108, Tit. I, 117 Stat. 1263 (2003). Mr. Villegas argues that this provision applies to his breach of contract claim against Dawn Mining and Newmont because his claim arises from Newmont's "failure to collect monies and deposit them in his account." ECF No. 88 at 11. However, after reviewing the case law Mr. Villegas cites in support of this proposition, as well as authority cited by Dawn Mining and Newmont, the Court agrees with Dawn Mining and Newmont that ITAS does not apply to breach of contract claims against private parties. *See Shoshone Indian Tribe of Wind River Res. v. United States*, 364 F.3d 1345-51 (Fed. Cir. 2004) (holding that identical language in Pub. L. 108-7, another 2003 appropriations bill, only defers the accrual of causes of action relating to the United States' failure to timely collect funds or mismanagement of tribal trust finds). Accordingly, the Court rejects Mr. Villegas' argument that ITAS defers accrual of his breach of contract claim against Dawn Mining and Newmont. And because Mr. Villegas' breach of contract claim against Dawn Mining and Newmont is barred by Washington's six-year statute of limitations, it must be dismissed. Dawn Mining and Newmont's motion is thus granted in this regard.

//

/

ORDER ~ 11

### ii.   Fraud and Constructive Fraud Claims

Dawn Mining and Newmont argue that Mr. Villegas' fraud claims should be dismissed because he has failed to allege each element of a fraud or constructive fraud claim, and has failed to plead fraud with particularity as required by Rule 9.

Under Washington law, a party asserting a fraud claim must prove the following nine elements: 1) representation of an existing fact; 2) materiality; 3) falsity; 4) the speaker's knowledge of its falsity; 5) the intent of the speaker that it should be acted upon by the plaintiff; 6) the plaintiff's ignorance of its falsity; 7) plaintiff's reliance on the truth of the representation; 8) the plaintiff's right to rely upon it; and 9) damages suffered by the plaintiff. *Stiley v. Block*, 130 Wn.2d 486, 505 (1996) (citing *Hoffer v. State*, 110 Wn.2d 415, 425 (1989)). Under Federal Rule of Civil Procedure 9, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Such allegations "must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (emphasis in original). Put simply, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Here, the Complaint alleges that "Federal and non-Federal Defendants have falsely represented the actions that they have taken upon

Plaintiff's interests in the Allotment" and that "Plaintiff was induced into signing agreements with Federal and non-Federal Defendants as a direct result of justifiable reliance upon such misrepresentations." ECF No. 1 ¶¶ 91, 93.    Mr. Villegas argues that these allegations, coupled with the Complaint's allegations that Dawn Mining and Newmont manipulated the grade of its ore, illegitimately charged Mr. Villegas for services, and utilized a right-of-way on the Allotment, amount to a legally-sufficient allegation of fraud.

The Court disagrees.    While these allegations satisfy the first three elements of fraud, the Complaint does not contain factual allegations that either Dawn Mining or Newmont misrepresented a material fact with the intent that Mr. Villegas would rely upon it.    Nor does the Complaint include factual allegations that Mr. Villegas actually took any action in reliance on these representations; while the Complaint states that Mr. Villegas "was induced into signing agreements . . . as a direct result of justifiable reliance upon such misrepresentations," ECF No. 1 ¶ 93, this is the type of "bare assertion" of the elements of a claim that *Twombly* and *Iqbal* teach should not be entitled to the presumption of truth.    *See Iqbal*, 556 U.S. at 680-81.    Furthermore, the Complaint does not differentiate which of Mr. Villegas' allegations are targeted at Dawn Mining and which are targeted at Newmont, instead lumping together its allegations with regard to all of the "non-Federal Defendants."    *See Schreiber Dist. CO. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (Rule 9(b) requires a plaintiff to state "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."

(citing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)).  In essence, the Complaint's allegations of fraud are based largely on Dawn Mining and Newmont's alleged breaches of the lease agreements, not fraudulent conduct.  Finally, to the extent that Mr. Villegas attempts to assert an equitable claim of constructive fraud, this claim must also fail because Mr. Villegas has not alleged the requisite "interested or sinister motive" required under Washington law.  *See Green v. McAllister*, 103 Wn. App. 452, 467-68 (2000) (quoting *In re Estate of Marks*, 91 Wn. App. 325, 336 (1998)).  Accordingly, the Court grants Dawn Mining and Newmont's motion in this regard.

### iii. Trespass Claim

Mr. Villegas also asserts a trespass claim against Dawn Mining and Newmont.  Dawn Mining and Newmont argue that this claim should be dismissed because it is time-barred and because Mr. Villegas has not alleged sufficient facts to state a claim.  Mr. Villegas appears to assert that his claim is for continuing trespass, but does not elaborate, arguing that Dawn Mining and Newmont have trespassed by operating on Allotment No. 156 without permission or under an expired lease, interfering with Mr. Villegas' ore, and utilizing a right-of-way through the allotment without compensating Mr. Villegas for its use.  Mr. Villegas does not address Dawn Mining and Newmont's statute of limitations argument.

Under Washington law, actions for permanent trespass upon real property and for injury to personal property must be brought within three years of the date of accrual.  RCW 4.16.080(1) & (2).  With regard to

ORDER ~ 14

claims of continuing trespass, "the applicable statute of limitations does not preclude a property owner from bringing an action against the trespasser; rather, it serves only to limit damages." *Wallace v. Lewis Cnty.*, 134 Wn. App. 1, 15 (2006) (citing *Bradley v. Am. Smelting and Refining Co.*, 104 Wn.2d 677, 693-94 (1985)).  Because the three-year statute of limitations only provides a limit on *damages* in continuing trespass claims, the "discovery rule has no application to a claim of continuing trespass." *Fradkin v. Northshore Util. Dist.*, 96 Wn. App. 118, 125 (1999) (citing *Bradley*, 104 Wn.2d at 693)).

Here, the Complaint alleges conduct that would constitute trespass when it states that Dawn Mining and Newmont operated under and expired lease and utilized a right-of-way over Allotment No. 156.  The Complaint does not, however, allege that any of these acts occurred within the last three years, and given the fact that operations at the Midnite Mine ceased in 1981, it is implausible that any of these actions did occur within the last three years.  Mr. Villegas has thus failed to allege damages, and his trespass claim fails as a matter of law.[5]  The Court grants Dawn Mining and Newmont's motion in this regard.

### iv.  Tortious Damage to the Environment Claim

The Complaint asserts a claim for "tortious damage to the environment," which Mr. Villegas' responsive memorandum describes as a

---

[5] The Court is aware that the CERCLA environmental remediation activities at the Midnite Mine are ongoing, but the Complaint makes no allegations of trespass related to the cleanup project, and the Court does not consider this fact in determining whether the Complaint states a viable trespass claim.

ORDER ~ 15

1  negligence claim.  Dawn Mining and Newmont argue that this claim should

2  be dismissed because "there is no legally recognized claim" of tortious

3  damage to the environment.  ECF No. 100 at 13.

4      Here, even construing Mr. Villegas' claim as a negligence claim, the

5  Court finds that the Complaint fails to state a viable claim for

6  negligent damage to Mr. Villegas' property.  The Complaint does not

7  describe the legal duty owed to Mr. Villegas by Dawn Mining and Newmont,

8  and does not identify which conduct breached that duty.  Instead, the

9  Complaint merely recites the elements of a negligence claim after

10  allegations that Mr. Villegas' property has been damaged.  As with Mr.

11  Villegas' fraud claim, the Complaint's "formulaic recitation of the

12  elements" of negligence are not entitled to the presumption of truth, and

13  thus do not serve to "raise [Mr. Villegas'] right to relief above the

14  speculative level."  *Twombly*, 550 U.S. at 555.  Accordingly, Mr.

15  Villegas' tortious damage to the environment/negligence claim fails as

16  a matter of law.

17          **v.    Request for Jurisdictional Discovery**

18      In his responsive memoranda, Mr. Villegas argues that he should be

19  entitled to jurisdictional discovery.  Mr. Villegas does not identify the

20  type of information that early discovery would produce, however, and his

21  request is somewhat perplexing as Newmont's motion does not challenge the

22  Court's subject matter jurisdiction over this case.  Accordingly, Mr.

23  Villegas' request for jurisdictional discovery is denied.

24          **vi.  Conclusion**

25      For the reasons discussed above, Mr. Villegas' four claims against

26  Dawn Mining and Newmont are either time-barred (breach of contract claim)

1   or are not sufficiently plead in the Complaint (fraud, trespass, and
2   tortious damage to the environment/negligence claims).    As such, the
3   Court grants Newmont's motion, which was joined by Dawn Mining, and
4   dismisses Mr. Villegas' claims against these two Defendants.  Because the
5   Court grants Newmont's motion to dismiss, it does not reach Dawn Mining's
6   motion to dismiss.  Mr. Villegas' claims against the Federal Defendants,
7   Washington Water Power/AVISTA, and the Estate of William Sharpe remain.
8   **III. Motion to Quash Subpoena**
9        Dawn Mining and Newmont have filed a joint motion to quash a
10  subpoena duces tecum that Mr. Villegas served on non-party Garden City
11  Group, Inc. (hereinafter "Garden City") on April 24, 2012.  Dawn Mining
12  and Newmont argue that Mr. Villegas' subpoena is premature in light of
13  Rule 26's mandate that "[a] party may not seek discovery from any source
14  before the parties have conferred as required by Rule 26(f)."  Fed. R.
15  Civ. P. 26(d)(1).  Mr. Villegas responds that 1) Dawn Mining and Newmont
16  have brought their motion without previously conferring in violation of
17  Local Rule 37.1(d), 2) his subpoena does not fall within the ambit of
18  Rule 26(d)(1), and 3) Dawn Mining and Newmont's motion is "academic"
19  because the parties planned to have their Rule 26(f) conference on May
20  8, 2012, six days before the date the records are required to be
21  disclosed.
22       After reviewing the written and e-mail correspondence attached to
23  Mr. Villegas' opposition to Dawn Mining and Newmont's motion to expedite,
24  ECF No. 104 at 5-9, the Court finds that the correspondence between
25  counsel satisfied Dawn Mining and Newmont's Local Rule 37.1(b) obligation
26  to confer in good faith prior to filing their motion to quash.  And the

Court rejects Mr. Villegas' argument that his subpoena does not fall within Rule 26(d)'s prohibition on pre-conference discovery simply because it was brought under Rule 45 and not Rule 26; Rule 26(d) clearly prohibits "discovery *from any source*" before the parties have conferred, which by its plain language includes subpoenas duces tecum served on non-parties. Fed. R. Civ. P. 26(d)(1) (emphasis added); *see also, e.g.*, *Desilva v. N. Shore-Long Isl. Jewish Health Sys. Inc.*, No. CV 10-1341(JFB)(ETB), 2010 WL 3119629 *1 (E.D.N.Y. Aug. 9, 2010) (quashing non-party subpoena because it was served prior to Rule 26(f) scheduling conference). It is also undisputed that this proceeding is not "exempted from initial disclosure under Rule 26(a)(1)(B)" and that Mr. Villegas' subpoena was not "authorized by [the Federal Rules of Civil Procedure], by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). Finally, on the record before it, the Court cannot determine whether the parties actually conferred on May 8, 2012 as Mr. Villegas' memorandum stated they would; the most-recent e-mail correspondence attached to the Declaration of Linnea Brown, ECF No. 111, appears to indicate that the parties would not. *See* ECF No. 111-1 at 2.

For these reasons, the Court grants Dawn Mining and Newmont's motion to quash the subpoena. Mr. Villegas is free to re-serve a subpoena on Garden City once the parties have completed a discovery conference pursuant to Rule 26(f).

## IV. Conclusion

For the reasons discussed above, **IT IS HEREBY ORDERED**:

1. Newmont's Motion to Dismiss Under Rule 12(B)(6) [sic], **ECF No. 38**, is **GRANTED**.

1     2.  Dawn Mining's Motion to Dismiss for Lack of Jurisdiction and

2 Failure to Join an Indispensable Party, **ECF No. 41**, is **DENIED as moot**.

3     3.  Dawn Mining and Newmont's Joint Motion to Quash Subpoena, **ECF**

4 **No. 92**, and related Motion to Expedite, **ECF No. 95**, are **GRANTED**.

5     **IT IS SO ORDERED.**  The District Court Executive is directed to enter

6 this Order and provide copies to counsel.

7     **DATED** this ___16th___ day of May 2012.

8

9                            S/ Edward F. Shea

                                 EDWARD F. SHEA

10                    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26 Q:\Civil\2012\1.dismiss.lc2.wpd

ORDER ~ 19