UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DONNELLY R. VILLEGAS,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>                    Defendants. | No.  CV-12-0001-EFS<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT** |

## I.    <u>INTRODUCTION</u>

Before the Court, without oral argument, is Defendants Department of the Interior ("DOI"), Bureau of Indian Affairs ("BIA"), Bureau of Land Management ("BLM"), Bureau of Safety and Environmental Enforcement ("BSEE"), Office of Natural Resources Revenue ("ONRR"), Environmental Protection Agency ("EPA"), Lisa P. Jackson, Stan Speaks, Kenneth L. Salazar, Robert Abbey, and James Watson's (collectively, "Defendants") Motion to Dismiss or for Summary Judgment.  ECF No. 154. Defendants contend that Plaintiff's Amended Complaint must be dismissed because the Defendants have not waived sovereign immunity for Plaintiff's claims; Defendants also assert that one of Plaintiff's claims is precluded by a settlement agreement in a different case. Having reviewed the pleadings and the record in this matter, this Court is fully informed.  For the reasons set forth below, the Court

grants Defendants' Motion to Dismiss or for Summary Judgment, ECF No. 154, and dismisses this action.

## II.  <u>BACKGROUND</u>

**A.    Factual History[1]**

Plaintiff Donnelly Villegas is an enrolled member of the Spokane Tribe of Indians (hereinafter, "Spokane Tribe"), a federally-recognized Indian tribe.  The Spokane Indian Reservation was created on January 18, 1881, by Executive Order of President Rutherford B. Hayes.  In 1902, Congress opened the Spokane Reservation to mineral development, providing that the Reservation "shall be subject to entry under the laws of the United States in relation to the entry of mineral lands."  Act of May 27, 1902, ch. 888, 32 Stat. 245 (1902). In a separate Joint Resolution passed later that year, Congress directed the Secretary of the Interior to:

> make allotments in severalty to the Indians of the Spokane Indian Reservation in the State of Washington, and upon the completion of such allotments the President shall by proclamation give public notice thereof, whereupon the

---

[1] The facts set forth herein are largely – but not exclusively – based on the factual allegations contained in the Amended Complaint, ECF No. 153. For purposes of this motion, this court construes the facts and pleadings in the light most favorable to the Plaintiff and accepts all well-pled factual allegations in the Amended Complaint, along with all reasonable inferences drawn therefrom.  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).  The Court also takes judicial notice of various pleadings and orders filed in *Cobell v. United States*, D.D.C. No. 96-cv-1285.  *See Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010) (noting that court records from proceedings in other jurisdictions can be considered in deciding Rule 12(b) motions, particularly when the cases involve the same litigants).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR
FOR SUMMARY JUDGMENT - 2

> lands in said reservation not allotted to Indians or used or reserved by the Government, or occupied for school purposes, shall be opened to exploration, location, occupation, and purchase under the mining laws.

Cong. J. Res. 31, 32 Stat. 744 (1902). In 1908, Congress directed the Secretary of the Interior to make allotments to all members of the Spokane Tribe who had not received allotments, and to sell and dispose of all unallotted "surplus" lands for use in agriculture and timber production. Act of May 29, 1908, 35 Stat. 458 (1908). This process of allotment and distribution was consistent with the United States' policy of "assimilation" of Indian tribes in the period surrounding the turn of the nineteenth century.

1.    Allotment No. 156

In 1910, pursuant to the Acts of Congress described above, Allotment No. 156 was issued to Edward Boyd. The issuing instrument stated that the United States would hold the land in trust for twenty-five years for the sole use and benefit of Mr. Boyd, and that at the end of that period, the United States would convey the 120-acre property in fee to Mr. Boyd or his heirs. Mr. Boyd died intestate in 1939, at which time his interest in the allotment was divided between his spouse and six children. By 1956, following the death of a number of Mr. Boyd's children, the interests in the allotment became concentrated in Lucy and Richard Boyd.

In a 1973 order entered in an otherwise-unspecified adjudication titled *In the Matter of the Estates of Richard Boyd*, a one-half interest in Allotment No. 156 was awarded to the Spokane Tribe, and the remaining 60-acre interest was divided equally between

Plaintiff and his sister, Ortencia Ford.  As part of this probate settlement, Plaintiff was also awarded an interest in stockpiles of high-grade uranium located in Ford, Washington.  The funds derived from these interests were to be paid into a trust account for the benefit of Plaintiff and his sister, managed by William Sharpe and ONB Bank and Trust until October 1974.

Fee title to the land was never transferred to Mr. Boyd or his heirs; however, Plaintiff retains his one-half interest in a 60-acre portion of Allotment No. 156, currently held in trust by the United States.

2.   Establishment of the Midnite Mine

In 1954, Dawn Mining Company, LLC (hereinafter "Dawn Mining") leased approximately 571 acres of the Spokane Indian Reservation from the United States for the purpose of mining uranium.  Floyd H. Phillips, Superintendent of Defendant DOI's Colville Indian Agency, entered into the lease "for and on behalf of the Spokane Tribe of Indians."  Compl. ¶ 27, ECF No. 153, at 9.  The land covered by the 1954 lease included unallotted land that was part of the original Spokane Reservation, as well as the entirety of Allotment No. 156.  In 1956, the Superintendent of the Colville Indian Agency again leased the allotment to Dawn Mining and Newmont USA Limited (hereinafter "Newmont") for a period of 15 years because "the individual Indian ownership was not entirely clear due to pending probate." *Id*. ¶ 29. Both leases were approved by Defendant BIA's Acting Area Director. Mr. Boyd's heirs were neither consulted about nor informed of either lease.

The 1956 lease required Dawn Mining and Newmont to submit monthly reports to the Superintendent of the Colville Indian Agency and to pay annual rents and royalties directly to the Superintendent, who would then issue rents and royalties to the allottees. The Superintendent was also tasked with directing audits of each lessee's accounts and books, while the Mineral Management Service was tasked with conducting audits of the rents and royalties paid to the Colville Indian Agency. Both the 1954 and 1956 leases also provided the Secretary of the Interior with authority to suspend mining operations, collect a bond, inspect the property, approve the lessee's attempts to terminate the lease upon showing that full provision had been made for the conservation and protection of the property, and terminate each lease for violations of the lease's terms and conditions. In 1964, Mr. Boyd's heirs and ONB Bank and Trust entered into a ten-year mining lease with Dawn Mining and Newmont under the same terms as the 1956 lease. The site leased by Dawn Mining and Newmont was developed into the "Midnite Mine."

3.   Conclusion of Mining Operations & EPA Superfund Cleanup

In 1981, the Midnite Mine closed. Due to the radioactive ore and toxic metals that were extracted from the mine, the land surrounding the mine (including Allotment No. 156) was heavily contaminated with radioactive materials. A 2008 Seattle Times article, quoted by Plaintiff in his Amended Complaint, identifies some of the serious environmental damage incurred near the mine site; it also cites a scientific model used by Defendant EPA that concluded that "someone living on food gathered in the [nearby area] and using

1  the water for sweat lodges had a 1-in-5 change of getting cancer from

2  the added radiation." Am. Compl. ¶ 56, at 15-16 (citing Warren

3  Cornwall, *Radioactive Remains: The Forgotten Story of the Northwest's*

4  *Only Uranium Mines*, Seattle Times, Feb. 24, 2008, *available at*

5  http://seattletimes.nwsource.com/html/pacificnw/2004191779_pacificpura

6  nium24.html). BIA has since determined that portions of Allotment No.

7  156 cannot be logged due to extensive environmental damage and

8  radioactivity.

9        In July 1998, the EPA sought support to include the Midnite Mine

10 on the Superfund National Priorities List (NPL) of sites eligible for

11 cleanup funds. In May 2000, the Midnite Mine was listed on the NPL,

12 and over the following years, EPA regularly shared information with

13 and sought input from members of the Spokane Tribe on the cleanup

14 effort. On October 5, 2005, EPA issued its proposed cleanup plan.

15 After a 105-day comment period and three public meetings, EPA adopted

16 the proposal. The Midnite Mine is currently the subject of a $152-

17 million environmental cleanup project. In January 2012, Senior U.S.

18 District Judge Justin Quackenbush signed a consent decree between the

19 United States, Dawn Mining, and Newmont regarding their respective

20 obligations to fund the environmental cleanup. See *United States v.*

21 *Newmont USA Ltd. and Dawn Mining Co.*, No. CV-05-020-JLQ, ECF No. 553

22 (E.D. Wash. Jan. 17, 2012)

23        4.   Specific Disputes Concerning Allotment No. 156

24        From the inception of the Midnight Mine until the mine

25 eventually closed in 1981, Plaintiff contends that Defendants engaged

26 in an ongoing course of conduct to improperly deprive him of the funds

to which he was entitled.  He also alleges that Defendants breached fiduciary duties by improperly managing his assets, failing to adequately supervise the other Defendants, and failing to adequately keep him informed about the nature of his accounts and the uses of Allotment No. 156.

*Trust Account & Missing Funds*.  William J. Sharp and ONB Bank and Trust were charged with managing a trust account on Plaintiff's behalf.  The funds derived from Plaintiff's interests in Allotment No. 156 were to be paid into that trust account until October 1, 1974. Plaintiff contends that BIA continued to make payments into the account until March of 1978 – payments which Plaintiff claims he never received.  Plaintiff also argues that charges were withdrawn from the trust account without explanation, and that some of the explanations listed on royalty ledgers issued by Defendants have been inexplicably redacted.  According to Plaintiff, Dawn Mining and Newmont paid rents and royalties directly to Defendants, who failed to properly distribute monies owed to Plaintiff.  Plaintiff also contends that Dawn Mining and Newmont improperly deducted mine reclamation and restoration costs and other services from Plaintiff's escrow account, in violation of federal law.

*Misappropriation of Uranium Ore & Improper Deductions*. Plaintiff avers that Dawn Mining and Newmont, under the supervision of Defendants, devalued and improperly disposed of Plaintiff's assets, including mixing low-grade ore with high-grade ore and under-measuring the quantity of ore.  According to Plaintiff, Defendants processed

and/or sold several stockpiles of uranium obtained from the Midnite

Mine, for which Plaintiff has received little or no payment.

**B.   Procedural History**

    1.   <u>The Present Suit</u>

    Plaintiff's initial Complaint, filed on January 3, 2012, named

the present Defendants, along with Dawn Mining, Newmont, Washington

Water Power/Avista, ONB Bank and Trust, and the Estate of Willard

Sharpe.   Compl. ¶¶ 14-20, ECF No. 1 at 5-7.   In that complaint,

Plaintiff brought seven claims against the present Defendants.   On

February 2, 2012 and July 25, 2012, the Court dismissed ONB Bank and

Trust, ECF No. 17, and Washington Water Power/Avista, ECF No. 128,

respectively.   On May 17, 2012, the Court dismissed Dawn Mining and

Newmont, finding Plaintiff's claims against those entities to be

barred by the applicable statute of limitations or otherwise lacking

in factual support.   ECF No. 116.   On March 30, 2012, Defendants filed

their first motion to dismiss.   ECF No. 61.   On January 30, 2013, the

Court granted the motion and afforded Plaintiff leave to amend his

Complaint.   ECF No. 152.

    Plaintiff filed the Amended Complaint on March 1, 2013.   Am.

Compl. ¶¶ 13-14, at 5.   Plaintiff now brings two claims against

Defendants: 1) an accounting for profits claim, and 2) unspecified

violations of the Administrative Procedures Act ("APA").   Plaintiff

asks the Court to 1) declare that Defendants are in violation of

federal common law, the APA, and fiduciary responsibilities owed to

Plaintiff; 2) declare that Defendants have never provided Plaintiff

with a full and complete accounting; 3) identify the accounting

standards governing Plaintiff's trust; 4) direct Defendants to provide Plaintiff with a complete accounting of his trust, to preserve documents concerning that trust, and to correct the trust balance; 5) direct Defendants to develop plans and processes for implementing and achieving the relief granted; 6) retain jurisdiction to supervise implementation of relief granted; and 7) award costs of suit. On March 18, 2013, Defendants again moved to dismiss. ECF No. 153.

    2.   <u>Court of Federal Claims Suit</u>

On December 27, 2011, approximately one week before filing the original Complaint in the instant suit, Plaintiff filed a near-identical Complaint in the Court of Federal Claims. *Villegas v. United States et al.*, No. 11-903-LJB, ECF No. 1 (Fed Cl. Dec. 27, 2011). Plaintiff's complaint in that case names the same Defendants as named in the original Complaint before this court; it also asserts the same legal claims and seeks the same monetary relief, although it omits the equitable relief Plaintiff sought in his original complaint. *Id.* By joint motion of Plaintiff and Defendants, the suit before the Court of Federal Claims has been stayed pending final resolution of this case. *Id.,* ECF No. 15 (June 4, 2012).

    3.   *Cobell* <u>Class Action</u>

Plaintiff is a class member in a suit alleging breach of fiduciary duties by the United States in mismanaging Indian trust assets. *See Cobell v. Salazar*, D.D.C. No. 96-cv-1285.[2] The Amended

---

[2] *Cobell* was a complex class action lawsuit filed on behalf of all Indian plaintiffs with land misuse claims against the United States; the case

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR
FOR SUMMARY JUDGMENT - 9

Complaint in that suit sought to compel the United States to provide a historical accounting to Indian beneficiaries, and it asked the court to award the plaintiffs appropriate legal and equitable relief for the mismanagement of trust funds, trust lands, and other non-monetary assets. *Id.*, Am. Compl. ¶¶ 43-52, ECF No. 3671.

The *Cobell* court recently approved a final settlement in which all class members have agreed to release future claims that could have been asserted in that suit. *Id.*, Order Granting Final Approval to Settlement, ECF No. 3850, *aff'd*, 679 F.3d 909 (D.C. Cir. 2012), *cert. denied*, No. 12-234, 2012 WL 4008066, at *1 (Oct. 29, 2012). The settlement agreement established two settlement classes: the Historical Accounting Class and the Trust Administration Class. *Id.*, Settlement Agreement, ¶¶ A.15-16, ECF No. 3660-2. The Historical Accounting Class was a non-opt-out class, *id.* ¶ C.2.a, while the Trust Administration Class was an opt-out class, *id.* ¶ C.2.b. Upon final approval of the settlement, members of the Historical Accounting Class were "deemed to have released, waived and forever discharged the United States . . . from the obligation to perform a historical accounting of his or her [Indian trust fund] account or any individual Indian trust asset . . . ." *Id.* ¶ I.1. Members of the Trust

recently settled after almost two decades of litigation. *See Indian Trust Settlement*, *available at* http://www.cobellsettlement.com/index. Since the original Complaint in *Cobell* was filed in 1996, *see Cobell*, ECF. No. 1, the case has been appealed to the D.C. Circuit Court of Appeals several times under several different names, including *Cobell v. Norton*, *Cobell v. Babbitt*, *Cobell v. Salazar*, and *Cobell v. Kempthorne*.

Administration Class who did not opt-out were "deemed to be forever barred and precluded from prosecuting any and all claims and/or causes of action that were, or should have been, asserted in the Amended Complaint . . . with respect to . . . matters stated in the Amended Complaint for Funds Administration Claims or Land Administration Claims" against the United States.  *Id.* ¶ 1.2.

Notice of the *Cobell* settlement was mailed to all members of the class who could be identified, and it was published in print media, by radio, on the internet, and on television.  *Villegas*, Decl. of Katherine Kinsella, ECF No. 154-1.[3]  On June 20, 2011, the district court held a fairness hearing and determined that: 1) the settlement was fair for absent class members; 2) "[t]he best notice practicable ha[d] been provided class members;" and 3) the judgment was binding on all members of the Trust Administration Class, meaning any future claims against the United States were barred.  *Cobell*, Order Granting Final Approval to Settlement, ECF No. 3850, at 4-8.  This agreement became final after all possible appeal periods had expired on Novermber 24, 2012.  *Id.*, Order of Dec. 11, 2012, ECF No. 3923.

Here, neither party disputes that Plaintiff is a member of both settlement classes in the *Cobell* suit.  Defendants argue that the claims in the instant suit are barred by the *Cobell* settlement, but Plaintiff contends he did not receive proper notice of the *Cobell* suit or settlement and therefore cannot be bound by its terms.  To make the

---

[3]  This declaration was prepared for the *Cobell* litigation, but attached by Defendants to this motion.

requisite factual showing to survive summary judgment on this issue, Plaintiff asks the Court to defer summary judgment, pursuant to Federal Rule of Civil Procedure 56(d), so Plaintiff can conduct limited discovery on the *Cobell* settlement and notice procedures.

### III.  <u>LEGAL STANDARDS</u>

**A.    Motion to Dismiss for Failure to State a Claim**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level. *Ashcroft v. Iqbal*, 552 U.S. 662 (2009); *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. *Twombly*, 550 U.S. at 555.  In ruling on a motion under Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff and accept all material factual allegations in the complaint, as well as any reasonable inferences drawn therefrom. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

**B.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).  Jurisdiction is a threshold issue and must be addressed prior to any consideration

of the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (universally rejecting the approach taken by numerous lower courts in "'assuming' jurisdiction for the purpose of deciding the merits"). Under Rule 12(b), the Court must dismiss an action if it determines that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1) (authorizing parties to seek pre-answer dismissal if the court lacks subject matter jurisdiction); *id.* 12(h)(3) (requiring the Court to *sua sponte* dismiss the action if it "determines *at any time* that it lacks subject matter jurisdiction" (emphasis added)). "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may . . . attack[] the existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction permits a court to consider "affidavits or any other evidence properly before the court," even material extrinsic to the pleadings. *Ass'n. of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). Once jurisdiction has been raised, the party opposing the motion to dismiss must "'satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.'" *Id.* (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

//

//

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR
FOR SUMMARY JUDGMENT - 13

C.   **Sovereign Immunity**

"It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citing *United States v. Sherwood*, 312 U.S. 548, 586 (1941)) (internal quotations omitted).   Waivers of sovereign immunity must be "unequivocally expressed in the statutory text[,] . . . . strictly construed in favor of the United States, and not enlarged beyond what the language of the statute requires." *United States v. Idaho*, 508 U.S. 1, 6-7 (1993) (internal citations and quotations omitted); *see also Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011).   A suit against a federal agency or officer which seeks relief against the sovereign is, in effect, a suit against the sovereign. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687-88 (1949).   Thus, the principles of sovereign immunity apply whenever a federal agency is sued. *Id.; see Beller v. Middendorf*, 632 F.2d 788, 796-98 (9th Cir. 1980), *overruled on other grounds by Lawrence v. Texas*, 539 U.S. 558 (2003).

Sovereign immunity is a jurisdictional bar: unless a statutory waiver exists, courts lack jurisdiction to entertain a suit against the United States or its agencies. *Sherwood*, 312 U.S. at 586.   For that reason, a motion to dismiss that asserts sovereign immunity is essentially a motion to dismiss for lack of subject-matter jurisdiction, and the same legal standards apply. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("The question

whether [of] whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction."). Plaintiff carries the burden to find and prove an explicit waiver of sovereign immunity. *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007); *see also McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) (holding that because the plaintiff sought relief, "it follows that he must carry throughout the litigation the burden of showing that he is properly in court").

**D.   Summary Judgment**

Summary judgment is appropriate if the record establishes "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The party opposing summary judgment must point to specific facts establishing a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).   If the non-moving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Celotex Corp.*, 477 U.S. at 322.

## IV.   DISCUSSION

The Court concludes that Plaintiff's generalized APA claim is insufficiently pled; moreover, Defendants have not waived sovereign immunity for this claim because the claim was not administratively exhausted.   As to Plaintiff's accounting for profits claim, Defendants have waived sovereign immunity, but Plaintiff is precluded from

pursuing this claim due to his membership in the *Cobell* settlement class. Although Defendants seek dismissal of both claims under Rule 12(b) or, in the alternative, by way of summary judgment pursuant to Rule 56, this distinction is inconsequential: no material facts are in dispute, and Plaintiff has not shown that further discovery is warranted. Accordingly, dismissal is warranted under either approach. The Court discusses these issues in turn below.

## A.    Sufficiency of Pleadings

The Court need not consider whether Defendants have waived sovereign immunity for Plaintiff's generalized APA claim, because the claim is insufficiently pled and must be dismissed under Rule 12(b)(6).[4] The Amended Complaint alleges that Plaintiff has "suffered legal wrongs because of final agency action that is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, and from unlawful withholding of or unreasonably delayed agency action." Am. Compl. ¶ 82, ECF No. 153, at 25. Although the Court has previously cautioned Plaintiff that this type of generalized assertion does not state a valid APA claim, *see* ECF No. 152, at 41, this assertion is nearly identical to the one Plaintiff made in his original Complaint, *see* Compl. ¶ 117, at 28.

It is axiomatic that a complaint must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)

---

[4] Plaintiff's accounting for profits claim, on the other hand, was sufficiently pled; therefore, the Court addresses that claim below.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR
FOR SUMMARY JUDGMENT - 16

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The above allegation from Plaintiff's Amended Complaint is precisely the sort of "naked assertions devoid of further factual enhancement," that the Supreme Court has found insufficient in an initial pleading. *See Iqbal*, 556 U.S. at 678.  Plaintiff completely failed to identify, either generally or specifically, the allegedly wrongful agency action or withholding of agency action in the Amended Complaint; and even if Plaintiff had identified such action or withholding of action, there is no indication it was "final agency action" as required by the APA. 5 U.S.C. § 704.  Plaintiff was previously advised that he needed to properly identify and provide the necessary factual support for his APA claim in his complaint, *see* ECF No. 152, at 40-41; however, he has failed to do so.

In response, Plaintiff asserts that the final agency action that gives rise to his generalized APA claim is Defendants' failure to provide an accounting.  Pl.'s Resp. in Opp'n, ECF No. 161, at 18.  But Plaintiff also asserts that his separate accounting claim is **not** a claim that arises under the APA, but is rather a creature of statute.[5] *Id.* at 17.  Plaintiff cannot have it both ways.  If the only final agency action that Plaintiff can identify is the failure to provide an accounting, his APA claim merely duplicates his accounting claim.

---

[5]  This argument will be addressed below in detail. *See* part IV. B.1.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR
FOR SUMMARY JUDGMENT - 17

**B.   Sovereign Immunity**

Defendants claim the Court lacks subject-matter jurisdiction to hear both claims in this suit because the United States has not waived sovereign immunity.   As explained below, Defendants have waived sovereign immunity for Plaintiff's accounting claim; however, Defendants have not waived sovereign immunity for Plaintiff's APA claim because Plaintiff has not administratively exhausted his claims with the BIA as required by 5 U.S.C. § 704.

1.   Accounting Claim

Plaintiff claims he is entitled to an accounting from Defendants based on certain fiduciary obligations in relation to management of Indian trusts. Am. Compl. ¶¶ 65-80, at 19-24.   Plaintiff cites a litany of statutes in his Amended Complaint, *id.* ¶ 70, that set out mandates that are sufficient to establish fiduciary duties that arise under trust law. *See Cobell v. Babbitt*, 52 F. Supp. 2d 11, 22 (D.D.C. 1999) ("Cobell III") ("The basic contours of defendants' fiduciary duties under this [Indian] trust are established by the statutes and . . . construed in light of the common law of trusts.").   The key statutes referenced in *Cobell III* were 25 U.S.C. § 161-162, *id.*, which are also referenced in Plaintiff's Amended Complaint, Am. Compl. ¶ 70, ECF. No 153.   Of particular importance to Plaintiff's claim is § 162a(d)(1), which requires that the Secretary of the Interior "[p]rovid[e] adequate systems for accounting for and reporting trust fund balances" to Indian trust members. 25 U.S.C. § 162a(d)(1).   The Amended Complaint specifically alleges that Plaintiff has not received any accounting for, or reporting of, his trust fund balances, despite

1  repeated requests.  Am. Compl. ¶ 74, ECF No. 153, at 22.  At one point

2  in the *Cobell* litigation, the D.C. Circuit concluded that 25 U.S.C. §

3  161-162 was sufficient to establish a fiduciary duty owed by the

4  United States to Indian plaintiffs.  *Cobell v. Norton*, 392 F.3d 461,

5  471 (D.C. Cir. 2004).

6      Defendants argue that Plaintiff's accounting for profits claim

7  cannot rest on the APA's waiver of sovereign immunity without first

8  alleging final agency action; however, this argument is not

9  persuasive.  The APA provides a waiver of sovereign immunity in suits

10 seeking judicial review of a federal agency action under 28 U.S.C. §

11 1331.  *Gallo Cattle Co. v. U.S.D.A.*, 159 F.3d 1194, 1198 (9th Cir.

12 1998).  This waiver, however, is limited by 5 U.S.C. § 704, which

13 provides that only "[a]gency action made reviewable by statute and

14 final agency action for which there is no other adequate remedy in a

15 court are subject to judicial review."  *Id.* (quoting § 704).

16 Defendants argue that they have not waived sovereign immunity under

17 the APA because Plaintiff has not alleged a "final agency action."

18 But, as noted above, Plaintiff's accounting for profits claim arises

19 from a breach of statutory duties codified in 25 U.S.C. § 161-162.

20 Because *Cobell* recognized a statutory cause of action under 25 U.S.C.

21 § 161-162, *see Cobell v. Norton*, 392 F.3d at 471, Plaintiff's

22 accounting for profits claim falls under the "agency action made

23 reviewable by statute" provision of § 704.  Therefore, Plaintiff need

24 not allege any final agency action to maintain this claim, and

25 Defendants have waived sovereign immunity for it.

26 //

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR
FOR SUMMARY JUDGMENT - 19

2.    <u>APA Claim</u>

Even if Plaintiff had specifically identified agency action giving rise to an APA claim, his generalized APA claim fails because Defendants have not waived sovereign immunity for this claim. Under the general review provisions of the APA, the United States has only waived sovereign immunity for suits arising from final agency action. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 882 (1990).  To demonstrate final agency action, Plaintiff must show that either the agency reached the "consummation" of its decision-making process, or the agency action determined the "rights and obligations" of the parties or is one from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  An agency action is not final until "an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993).  "When an 'agency rule dictates that exhaustion of remedies is required, the federal courts may not assert jurisdiction to review agency action until the administrative appeals are complete.'" *Timbisha Shoshone Tribe v. Salazar*, 697 F. Supp. 2d 1181, 1188 (quoting *White Mountain Apache Tribe v. Hodel*, 840 F.2d 675, 677 (9th Cir. 1988)).

BIA regulations provide that "[n]o decision, which at the time of its rendition is subject to appeal to a superior authority in the Department, shall be considered final so as to constitute Departmental action subject to judicial review under 5 U.S.C. § 704[.]" 25 C.F.R. § 2.6(a).  The Code of Federal Regulations establishes the chain of authority to decide appeal of agency decisions, including agency

inaction.  *See, e.g.*, 25 C.F.R. §§ 2.3, 2.4(a), 2.6(a) & 2.8.  As was the issue with his original Complaint, Plaintiff has not demonstrated that he properly raised his vaguely-pled APA violations at any level of BIA review, much less exhausted such claims.  In fact, Plaintiff tacitly admits that he has not exhausted these administrative remedies, instead arguing that pursuit of these remedies would be futile.  Pl.'s Resp. in Opp'n, at 19 n.14, ECF No. 161.  Even assuming that this Court could waive the APA's administrative exhaustion requirement, the futility exception is a high bar.  *See Smith v. Blue Cross & Blue Shield United of Wisc.*, 959 F.2d 655, 659 (7th Cir. 1992) ("In order to come under the futility exception [to the exhaustion requirement], the [plaintiffs] must show that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision.").  Plaintiff has not made such a showing in his Amended Complaint; therefore, he may not avail himself of the futility exception.

Accordingly, the vague APA violation Plaintiff alleges does not, as pled, constitute final agency action u 5 U.S.C. § 704.  Plaintiff's failure to pursue agency remedies renders § 702's waiver of sovereign immunity inoperative; accordingly, the Court lacks jurisdiction to hear his APA claim.  *See Stock W. Corp. v. Lujan*, 982 F.2d 1389, 1393-94 (9th Cir. 1993) ("On three occasions, we have upheld the dismissal of lawsuits challenging BIA decisions under the [APA] on the ground that the plaintiff failed to take the required administrative appeal. In so doing, we have noted the jurisdictional nature of the administrative appeal requirement." (citations omitted)).

**C.    Preclusion Under the *Cobell* Settlement**

Although Defendants have waived sovereign immunity for Plaintiff's accounting claim, the claim cannot survive dismissal or — alternatively — summary judgment, because of the preclusive effect of the *Cobell* settlement.    On its face, the settlement clearly waives Plaintiff's right to bring his accounting claim, and both parties agree that Plaintiff is a member of that settlement.    Plaintiff objects to the preclusive effect of the settlement, alleging he received insufficient notice of the settlement; however, as discussed below, his objection is untimely, raised in an inappropriate forum, and ultimately irrelevant.    Accordingly, Plaintiff is precluded from pursuing the present accounting claim due to his membership in the *Cobell* settlement.    Although Defendants seek dismissal of this claim under Rule 12(b) or summary judgment under Rule 56, the distinction is immaterial: no material facts are in dispute, and Plaintiff has not shown that any further discovery is warranted.

1.    Dismissal Pursuant to Rule 12(b)

Claim preclusion defenses, such as *res judicata*, may be considered by way of a Rule 12(b)(1) motion to dismiss.    *See Gupta v. Thai Airways Inter. Ltd*, 487 F.3d 759, 763, 765 (9th Cir. 2007). Generally, the affirmative defenses of "*res judicata*, estoppel, or any other matter constituting an avoidance . . . must be affirmatively [plead]."    Fed. R. Civ. P. 8(c)(1); *Zeligson v. Hartman-Blair, Inc.*, 135 F.2d 874, 876 (10th Cir. 1943).    Therefore, consideration of these issues is often left for post-answer dispositive motions.    An affirmative defense can, however, "be adjudicated on a motion to

dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." *Rodi v. S. New Eng. Sch. of Law,* 389 F.3d 5, 12 (1st Cir. 2004).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction permits a court to consider "affidavits or any other evidence properly before the court," even material extrinsic to the pleadings. *Ass'n. of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). Court records from other jurisdictions can be relied upon in 12(b) motions, especially when the cases involve the same litigants. *See Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010). Accordingly, the Court takes judicial notice of the settlement documents and relevant order from the *Cobell* litigation, which does not convert this motion into a motion for summary judgment. *See id.*[6]

//

---

[6] Generally, "a district court may not consider any material beyond the pleadings in ruling on a [Rule] 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). There is, however, one relevant exception that applies here: courts may take judicial notice of "a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Court records may be considered under Rule 201(b)(2). *See Horne*, 392 Fed. Appx. at 802. Therefore, even if this motion was considered under Rule 12(b)(6) instead of Rule 12(b)(1), the result remains the same.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR
FOR SUMMARY JUDGMENT - 23

District courts have the power to enforce "an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). This rule applies to members of class action suits who attempt to bring subsequent litigation that was waived as a part of the original settlement. *See Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984). ("[U]nder elementary principles of prior adjudication[,] a judgment in a properly entertained class action is binding on class members in any subsequent litigation."). Class judgment is still binding when that judgment was reached as a result of a settlement agreement. *Wyly v. Weiss*, 679 F.3d 131, 143 (2d Cir. 2012). Neither party disputes Plaintiff's membership in the *Cobell* settlement; nor is there any disagreement that that settlement precludes class members from bringing a subsequent accounting claim against the United States. Thus, Plaintiff's entire argument for avoiding the preclusive effect of the *Cobell* settlement rests on his self-serving and unsupported contention that he did not personally receive notice of the settlement in time to dispute his membership in the *Cobell* settlement class. Plaintiff contends that lack of actual notice could lead to avoidance of the settlement's preclusive effects on due process grounds, and he asks for the opportunity to conduct additional discovery regarding execution of the *Cobell* settlement program. The problem with Plaintiff's argument is two-fold: first, actual notice is not required to comport with due process in this case; and second, his argument is an impermissible collateral attack that should have been raised before the *Cobell* court or on appeal before the D.C. Circuit.

Actual notice need not be provided to absent members of a class action settlement to bind them, assuming the notice provided was the "best practicable notice." *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994).   The issue of adequate notice for absent class members was litigated in *Cobell*, and the district court determined that the notice executed was the best practicable.   *Cobell*, Order Granting Final Approval to Settlement, ECF No. 3850, at 6.  The D.C. Circuit affirmed in all respects on this issue.   *See Cobell v. Salazar*, 679 F.3d 909 (D.C. Cir. 2012).  Plaintiff cannot now attempt to relitigate that issue in this forum.  *See In re Diet Drugs*, 431 F.3d 141, 146 (3d Cir. 2005) ("Once a court has decided that due process protections did occur for a particular class member or group of class members, the issue may not be relitigated.").  Plaintiff had ample opportunity to oppose the *Cobell* court's conclusion by appealing the decision to the D.C. Circuit, but he chose not to pursue such an appeal.[7]

Plaintiff argues that this is not an impermissible collateral attack on the *Cobell* settlement because he does not challenge the sufficiency of notice for the class as a whole but instead disputes only the sufficiency of the notice afforded to him personally.   In support of this argument, Plaintiff cites a number of cases that allegedly establish an individual right to dispute the fairness of

---

[7]  In fact, Plaintiff did appeal the *Cobell* settlement in the proper forum, but voluntarily dismissed his appeal to pursue the present case. Pl.'s Resp. in Opp'n., at 12-13 n.7, ECF No. 161.

notice in class action suits after a court has already determined that notice was fair for the class as a whole.  *See, e.g.*, *Friedman v. Cal. State Emp. Ass'n*, 2010 WL 2880148, at *6 n.4 (E.D. Cal. July 21, 2010); *DeJulius v. New England Health Care Emp. Pension Fund*, 429 F.3d 935, 947 n.14 (10th Cir. 2005); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  The strongest case in support of this claim is *Torrisi*, which states that an individual who "claims he did not receive adequate notice and therefore should not be bound by the settlement," can "litigate that issue on an individual basis when the settlement is raised as a bar to a lawsuit he has brought."  8 F.3d at 1375.

But *Torrisi* does not apply here, for two reasons.  First, the cited language is pure dictum.  *See id.* (noting that "the question before us today is not whether some individual [class members] got adequate notice").  Plaintiff does not cite any case that permitted an individual class member to avoid the preclusive effect of a binding settlement in which notice provided to the class as a whole was determined to comport with due process.  On the other hand, Defendants cite a recent Ninth Circuit decision that holds that an individual class member's failure-to-receive-notice challenge to a class action settlement from another jurisdiction was an impermissible collateral attack.  *Skilstaf, Inc. v. CVS Corp.*, 669 F.3d 1005, 1024 (9th Cir. 2012).  *Skilstaf* controls here.

Second, Plaintiff *had* an opportunity to "litigate [his] issue on an individual basis", *Torrisi*, 8 F.3d at 1375, in the D.C. Circuit but chose not to do so.  Plaintiff could have followed through with his

appeal in the D.C. Circuit, or he could have sought relief directly from the district court under Rule 60. Notably, Plaintiff filed an appeal in the D.C. Circuit, but voluntarily dismissed it because "it became clear that the relief he was seeking was not available in that forum." Pl.'s Resp. in Opp'n, ECF No. 161, at 12-13 n.7. Plaintiff states that he chose not to fully pursue an appeal or a Rule 60(b) motion because, as he was not challenging notice for the class as a whole, an appeal would have been futile. *Id*. at 12. But, notably, the district court in *Cobell* also made a determination that all absent class members who had not yet objected and been excluded from the class had "released, waived, and forever discharged" any claims that could have been asserted as a part of the *Cobell* litigation. Order Granting Final Approval to Settlement, ECF No. 3850, at 8. This is the **exact** determination that Plaintiff is attempting to avoid in this case; but instead of appealing the final approval order or seeking Rule 60(b) relief, Plaintiff asks this Court to uphold his collateral attack on the *Cobell* court's conclusion. The Court declines to do so. Plaintiff abandoned his efforts to seek relief in the appropriate district and appellate courts; accordingly, he remains a member of the *Cobell* settlement, and his accounting claim is barred.

  2.   Summary Judgment Pursuant to Rule 56

  Even if Plaintiff's accounting claim is more properly addressed through summary judgment and not by way of a motion to dismiss, summary judgment for Defendants is warranted. Plaintiff asks the Court to deny or defer summary judgment under Rule 56(d), which requires such relief in cases where a nonmovant shows that it cannot

present facts necessary to oppose the motion. Fed. R. Civ. P. 56(d). Specifically, Plaintiff alleges that summary judgment is improper because he has not had sufficient opportunity to discover whether the notice required by the *Cobell* settlement was actually provided to him. However, Defendants are entitled to summary judgment because, as discussed above, actual notice is not required to enforce a settlement's preclusive effects.

For a nonmovant to prevail under Rule 56(d), the Ninth Circuit requires that party "make (a) a timely application which (b) sufficiently identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Emplrs. Teamsters Local Nos. 175 & 505 v. Clorox*, 353 F.3d 1125, 1129 (9th Cir. 2004) (quotation omitted). Generally, if a summary judgment motion is filed "before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56[(d)] motion fairly freely." *Burlington N. Santa Fe R.R. v. Assiniboine & Sioux Tribes*, 323 F.3d 767, 773 (9th Cir. 2003). However, a court "does not abuse its discretion by denying further discovery if . . . the movant fails to show how the information sought would preclude summary judgment." *Cal. Union Ins. v. Am. Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir. 1990) (citations omitted).

Denial of Plaintiff's 56(d) request is appropriate because the information that Plaintiff seeks would not preclude summary judgment. Plaintiff seeks to discover information that would allow him to determine whether notice was properly executed as to him. However,

his request is moot for three reasons.  First, as stated above, such discovery could only lead to an impermissible collateral attack on the D.C. Circuit's finding in *Cobell* that "[t]he best notice practicable has been provided to class members, including individual notice where members could be identified through reasonable effort."  Order Granting Final Approval to Settlement, ECF No. 3850, at 6. Plaintiff's disagreement with this conclusion should have been taken up as a part of the *Cobell* litigation.  Second, even if the collateral attack is permitted, the information that Plaintiff seeks does not require discovery.  The Kinsella declaration includes the process for the notice program that was approved in *Cobell*.  Decl. of Katherine Kinsella, ECF No. 154-1.  In addition, there were two relevant declarations of Jennifer Keogh in the *Cobell* litigation that Plaintiff had access to.  The first was a declaration outlining the general notice process for the settlement agreement.  *Cobell*, Decl. of Jennifer Keogh, May 16, 2011, ECF No. 3762-4.  The second, which was filed in response to **Plaintiff's** *Cobell* appeal, outlines the notice process that was executed in regards to Plaintiff specifically.  *Id.*, Decl. of Jennifer Keogh, October 3, 2011, ECF No. 3869-1.  The information that Plaintiff seeks has therefore been available for months; he has proffered no explanation of why additional discovery is necessary.  Third, even if Plaintiff was allowed to conduct additional discovery, the adequacy of the personal notice executed in regards to Plaintiff is not a material fact that would preclude summary judgment. Even if Plaintiff's assertions regarding his lack of actual notice are taken as true, due process does not require that class members

actually receive notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1320–1322 (11th Cir. 2012), *cert. denied*, 135 S.Ct. 940 (2013) (actual notice not required for absent class member). The Ninth Circuit only requires that absent class members receive the "best practicable" notice, not "actual notice." *Silber*, 18 F.3d at 1453–54. Thus, the only material fact is whether the best practicable notice was provided for class members, and the District Court found that the *Cobell* notice program was the "best practicable." Therefore, Plaintiff could not discover any facts which would change his status within the *Cobell* settlement. Thus, additional discovery pursuant to Rule 56(d) is not warranted, and Defendants are entitled to summary judgment on Plaintiff's accounting claim.

## V.    CONCLUSION

Plaintiff's generalized APA claim is insufficiently pled and fails to demonstrate a valid waiver of sovereign immunity. Plaintiff's accounting for profits claim is precluded by the *Cobell* settlement. Accordingly, each of these claims is dismissed. Even if summary judgment were the appropriate procedural device for granting such a dismissal, Plaintiff has failed "to show how the information sought would preclude summary judgment." *Cal. Union Ins.,* 914 F.2d at 1278 (9th Cir. 1990). Thus, Plaintiff's request to defer summary judgment pursuant to Rule 56(d) is denied.

In opposing the instant motion, Plaintiff does not request further leave to amend his complaint; accordingly, the Court dismisses the Amended Complaint with prejudice and directs entry of judgment.

//

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1.    Defendants' Motion to Dismiss, **ECF No. 154,** is **GRANTED**.

2.    The Amended Complaint, **ECF No. 153**, is **DISMISSED WITH PREJUDICE.**

3.    All pending motions, deadlines, and hearings are **STRICKEN.**

4.    The Clerk's Office is directed to **ENTER JUDGMENT** in favor of Defendants and to **CLOSE** this file.

**IT IS SO ORDERED.**   The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 5th day of August 2013.

                         s/Edward F. Shea
                         _____
                         EDWARD F. SHEA
                 Senior United States District Judge